# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 06-CV-6686 (JFB) (ARL)

GERALDINE MELNICK AND LONNIE SCHWIMMER,

Plaintiffs,

VERSUS

CARY PRESS,

Defendant.

**MEMORANDUM AND ORDER**
August 28, 2009

JOSEPH F. BIANCO, District Judge:

On January 16, 2009, the Court granted a motion by the law firm of Wagner Davis P.C. ("Wagner Davis" or "the firm") to withdraw as counsel of record for plaintiffs Geraldine Melnick ("Melnick") and Lonnie Schwimmer ("Schwimmer") (collectively, "plaintiffs"). On February 6, 2009, plaintiffs' newly retained counsel filed a notice of appearance in this case.

Currently pending before the Court is Wagner Davis' motion to fix the amount of an attorneys' charging lien in connection with its former representation of plaintiffs in this case, pursuant to New York Judiciary Law § 475 ("Section 475"). Also pending is plaintiffs' motion to compel Wagner Davis' compliance with this Court's Order dated June 16, 2009, which, *inter alia*, directed Wagner Davis to turn over to plaintiffs' new counsel any and all discovery materials provided to Wagner Davis P.C. in connection with this case.

For the reasons set forth below, Wagner Davis' motion to fix the amount of an attorneys' charging lien, pursuant to Section 475 of the New York Judiciary Law, is granted in the amount of $26,844.91. It is further ordered that, because Wagner Davis has provided plaintiffs' new counsel with any and all discovery materials acquired from the defendant in this case, consistent with this Court's Order of January 16, 2009, and any remaining documents are properly subject to a retaining lien held by Wagner Davis, plaintiffs' motion to compel compliance with this Court's Order is denied.

I. BACKGROUND

The Court assumes familiarity with the facts of the underlying case, which were described as part of this Court's ruling on plaintiffs' motion for the appointment of a

temporary receiver and plaintiffs' motion to dismiss defendant's monetary counterclaims, rendered on September 21, 2007. Accordingly, only the procedural history that is relevant to the pending motions is set forth below.

Wagner Davis represented plaintiffs in this action from September 12, 2006, when the firm was retained, to December 10, 2008, when plaintiffs advised Wagner Davis that they were unable to make payment on outstanding invoices for legal services performed in connection with this case, and the firm and plaintiffs agreed to terminate the representation. On December 31, 2008, Wagner Davis moved this Court to, *inter alia*, relieve the firm as attorneys of record for plaintiffs. Wagner Davis ceased to be the attorneys of record for plaintiffs on January 16, 2009, when the Court granted the firm's motion to withdraw as counsel of record. At the time it moved to be relieved as counsel, Wagner Davis also requested that the Court fix the amount of a charging lien for outstanding legal fees and disbursements against plaintiffs' cause of action, pursuant to New York State Judiciary Law § 475.

Following the firm's retention by plaintiffs on September 12, 2006, and before the firm advised plaintiffs that it was discontinuing its representation on December 10, 2008, Wagner Davis took many actions in this case on plaintiffs' behalf, including the following: filing the complaint on December 20, 2006; appearing on March 7, 2007 before the Court for a pretrial conference and agreeing to submit this matter to mediation, which ultimately did not go forward; filing a letter on June 19, 2007, requesting a pre-motion conference with respect to a motion seeking appointment of a receiver and striking the counterclaims of defendant; participating in a phone conference with newly retained counsel for the defendant on July 6, 2007; agreeing to a proposed pretrial scheduling order that was entered on July 16, 2007; filing the motion seeking appointment of a receiver and striking defendant's counterclaims on August 16, 2007 and submitting the reply in support of such motion on September 14, 2007; requesting an extension of the discovery end date of December 13, 2007, on consent; serving plaintiffs' first set of interrogatories, demand for production of documents and notice of deposition on defendant on January 10, 2008; filing a motion on February 26, 2008, seeking sanctions against defendant and striking defendant's answer and counterclaims for failure to provide responses to plaintiffs' discovery demands and appear for deposition; renewing such a motion for sanctions on April 3, 2008 and participating in a hearing conducted by the Court on April 25, 2008; renewing such a motion for sanctions for a third time on June 4, 2008, on the basis that defendant had failed to produce documents in compliance with the Federal Rules of Civil Procedure; seeking further extensions of the discovery deadline to allow review of voluminous documents produced by defendant; conducting the deposition of defendant on July 22, 2008; filing a request for a pre-motion conference in anticipation of filing a motion for summary judgment on August 6, 2008; participating in a pre-motion conference on September 12, 2008, during which defendant consented to partition of two of the three properties at issue in this case, as well as to referral of those claims to a referee for an accounting and sale of the properties; and participating in settlement discussions with defendant in October of 2008, prior to advising the Court that settlement would not be possible on December 3, 2008.

On December 10, 2008, "following several conversations over the prior few months

2

regarding outstanding invoices for legal services rendered herein, Steven R. Wagner, a Member of the Firm, spoke with Melnick and . . . agreed that as a result, the Firm would terminate its representation of Melnick in the matter." (Aff. of Mikelle V. Komor ¶ 34.) This termination was confirmed via e-mail to Melnick. (Aff. of Mikelle V. Komor ¶ 34.)

On January 5, 2009, the Court scheduled a telephone conference with the parties and ordered that the proposed motion for summary judgment be held in abeyance pending resolution of the issues regarding counsel. During the conference call held on January 16, 2009, the Court granted Wagner Davis' motion to withdraw and directed Wagner Davis to turn over to plaintiffs' new counsel any and all discovery materials provided to Wagner Davis in connection with this case. The Court further permitted Wagner Davis to submit additional documentation in support of its motion to fix the amount of an attorneys' charging lien. Subsequently, Wagner Davis forwarded the outstanding invoices to the undersigned's chambers for *in camera* inspection.

II. DISCUSSION

A. Wagner Davis' Motion to Fix an Attorneys' Charging Lien

1. Entitlement to a Charging Lien

Under New York law, an attorney who is discharged is statutorily entitled to a charging lien on any monetary recoveries obtained by the former client in the proceedings in which the attorney had rendered legal services.[1] *See*

---

[1] A discharged attorney is also entitled to a retaining lien on the former client's papers and property that are in the attorney's possession, under New York common law. *See Resolution Trust*

N.Y. Judiciary Law § 475. The Second Circuit has explained the rationale behind the charging lien:

> New York's statutory charging lien, *see* N.Y. Judiciary Law § 475 (McKinney 1983), is a device to protect counsel against "the knavery of his client," whereby through his effort, the attorney acquires an interest in the client's cause of action. *In re City of New York*, 5 N.Y.2d 300, 307, 184 N.Y.S.2d 585, 157 N.E.2d 587 (1959). The lien is predicated on the idea that the attorney has by his skill and effort obtained the judgment, and hence "should have a lien thereon for his compensation, in analogy to the lien which a mechanic has upon any article which he manufactures." *Williams v. Ingersoll*, 89 N.Y. 508, 517 (1882).

*Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 177 (2d Cir. 2001).

Specifically, Section 475 of the New York Judiciary Law provides:

> From the commencement of an action . . . the attorney who appears for a party

---

*Corp. v. Elman*, 949 F.2d 624, 626 (2d Cir. 1991); *see also McDermott v. Great Am. Alliance Ins. Co.*, No. 5:02 Civ. 0607 (NAM/DEP), 2006 WL 2038452, at *2 (N.D.N.Y. July 18, 2006) ("In New York, an attorney who ceases to represent his or her client but has rendered services for which payment has not yet been received has two forms of recourse against non-payment, other than commencement of a plenary action – one derived from the common law [generally referred to as a retaining lien], and the other created by statute [referred to as a charging lien]."). Wagner Davis' assertion of a retaining lien is discussed in connection with plaintiffs' motion to compel *infra*.

3

has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Judiciary Law § 475. The Second Circuit has made clear that Section 475 governs attorneys' charging liens in federal courts sitting in New York, and such liens are "enforceable in federal courts in accordance with its interpretation by New York courts." *Itar-Tass Russian New Agency v. Russian Kurier, Inc*., 140 F.3d 442, 449 (2d Cir. 1998) (internal quotation marks and citations omitted). In order to establish a lien under Section 475, "there must be asserted a claim which can eventuate in there being proceeds payable to, or assets recoverable by, the client as a result of the efforts of the attorney." *Rosewood Apartments Corp. v. Perpignano*, No. 99 Civ. 4226 (NRB), 2005 WL 1084396, at *3 (S.D.N.Y. May 5, 2005). Further, attorneys who terminate their representation are still entitled to enforce their charging liens, as long as the attorney does not withdraw without "good cause" and is not discharged for "good cause." *See, e.g., McDermott v. Great Am. Alliance Ins. Co.*, No. 5:02 Civ. 0607 (NAM/DEP), 2006 WL 2038452, at *2 (N.D.N.Y. July 18, 2006); *Hill v. Baxter*, No. 98 Civ. 4314 (SJF) (ASC), 2005 WL 465429, at *2 (E.D.N.Y. Feb. 7, 2005); *Petition of Harley & Browne*, 957 F. Supp. 44, 48 (S.D.N.Y. 1997); *Rankel v. Tracey*, No. 84 Civ. 3412 (KMW), 1991 WL 156324, at *7 (S.D.N.Y. Aug. 2, 1991); *Klein v. Eubank*, 663 N.E.2d 599, 600 (N.Y. 1996).

Here, Wagner Davis moved to withdraw its representation on satisfactory grounds, and the Court thus granted the motion, since it is well-settled in the Eastern and Southern Districts of New York that non-payment of legal fees is a valid basis for granting a motion to withdraw pursuant to Local Civil Rule 1.4. *See, e.g., Freund v. Weinstein*, No. 081469 (FB) (MDG), 2009 WL 750242, at *1 (Mar. 19, 2009); *see also Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 464 F. Supp. 2d 164, 165 (E.D.N.Y. 2006) ("Courts have long recognized that a client's continued refusal to pay legal fees constitutes a 'satisfactory reason' for withdrawal under Local Rule 1.4.") (collecting cases); *Diarama Trading Co., Inc. v. J. Walter Thompson U.S.A., Inc.*, No. 01 Civ. 2950 (DAB), 2005 WL 1963945, at *1 (S.D.N.Y. Aug. 15, 2005) ("'Satisfactory reasons' include failure to pay legal fees, a client's lack of cooperation – including lack of communication with counsel, and the existence of an irreconcilable conflict between attorney and client.") (internal quotation marks and citations omitted); *Cower v. Albany Law School of Union Univ.*, No. 04 Civ. 0643 (DAB), 2005 WL 1606057, at *5 (S.D.N.Y. July 8, 2005) ("It is well settled that nonpayment of fees is a legitimate ground for granting counsel's motion to withdraw."); *HCC, Inc. v. R H & M Machine Co.*, No. 96 Civ. 4920, 1998 WL 411313, at *1 (S.D.N.Y. July 20, 1998) (Leisure, J.) ("It is well-settled that non-payment of fees is a valid basis for granting counsel's motion to withdraw.").

Indeed, plaintiffs do not argue that Wagner Davis has extinguished its right to a charging lien for withdrawing without good cause. Although a few courts have suggested that the "good cause" inquiry with respect to a charging lien reflects a higher standard than the

"satisfactory reason" required to successfully withdraw as counsel under Local Civil Rule 1.4, *see, e.g.*, *Diarama Trading Co., Inc.*, 2005 WL 1963945, at *1; *Hallmark Capital Corp. v. The Red Rose Collection, Inc.*, No. 96 Civ. 2839 (RPP) (AJP), 1997 WL 661146, at *3 (S.D.N.Y. Oct. 21, 1997), in this case, such a distinction does not defeat Wagner Davis' motion because the Court finds that the good cause threshold has been satisfied. The Second Circuit has acknowledged that, under certain circumstances, "[a] client's refusal to pay attorney's fees may constitute 'good cause' to withdraw." *United States v. Parker*, 439 F.3d 81, 104 (2d Cir. 2006) (discussing good cause standard in the context of an appeal from a criminal case in the Western District of New York where counsel had been assigned to his client pursuant to the Criminal Justice Act). "In most cases, however, courts have permitted counsel to withdraw for lack of payment only where the client either 'deliberately disregarded' financial obligations or failed to cooperate with counsel." *Id.* In this case, the invoices reflect that plaintiffs failed to pay Wagner Davis for over eight months and admitted that they could not meet the financial obligations under the retainer agreement. Moreover, plaintiffs did not oppose Wagner Davis' motion to withdraw during the telephone conference held with the parties. Under these circumstances, the Court determines that Wagner Davis withdrew with good cause. *See Lansky v. Easow*, 304 A.D.2d 533, 534 (N.Y. App. Div. 2003) ("Where an attorney's representation terminates upon mutual consent, and there has been no misconduct, no discharge for just cause, and no unjustified abandonment by the attorney, the attorney maintains his or her right to enforce the statutory lien."); *Hae Sook Moon v. City of New York*, 255 A.D.2d 292, 292 (N.Y. App. Div. 1998) (same); *Calabro v. The Bd. of Educ. of the City of N.Y.*, No. 11264/96, 2005 WL 3001534, at *2 (N.Y. Sup. Ct. June 28, 2005) (same).

Accordingly, the Court finds that Wagner Davis has retained its right to a statutory charging lien for the services rendered on behalf of plaintiffs in this case prior to its withdrawal as counsel. This lien will thus attach to any "verdict, report, determination, decision, judgment or final order" rendered in plaintiffs' favor, if such a favorable result is ultimately achieved by plaintiffs. *See* N.Y. Judiciary Law § 475.

2. Amount of the Charging Lien

As for the amount at which the charging lien should be fixed, it is also well settled in New York that absent an express agreement between the attorney and client to the contrary, a discharged attorney may recover the fair and reasonable value of the services rendered, determined at the time of the discharge and computed on the basis of *quantum meruit*. *See Skylon Corp. v. Greenberg*, 164 F.3d 619, 619 (2d Cir. 1998); *Cohen v. Grainger, Tesoriero & Bell*, 622 N.E.2d 288, 289 (N.Y. 1993); *Teichner v. W&J Holsteins, Inc.*, 478 N.E.2d 177, 178-79 (N.Y. 1985); *Schneider, Kleinick, Weitz, Damashek & Shoot v. New York*, 302 A.D.2d 183, 188 (N.Y. App. Div. 2002); *see also Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148 (2d Cir. 1998) ("It is undisputed that it was proper to determine the amount of Butler's § 475 charging lien on a *quantum meruit* basis, ascertaining the reasonable value of the legal services rendered up to the date of the Gelmin parties' substitution of new counsel."). The theory of *quantum meruit*, rather than the retainer agreement, is the basis for determining the amount at which to fix the charging lien. Although a court is not bound by the parties' retainer agreement, it may still use such agreement as guidance in determining the

reasonable value of the services provided. *See McDermott*, 2006 WL 2038452, at *3.

Specifically, in determining a proper award of attorney's fees, the Court may consider "'(1) the difficulty of the matter; (2) the nature and extent of the services rendered; (3) the time reasonably expended on those services; (4) the quality of performance by counsel; (5) the qualifications of counsel; (6) the amount at issue; and (7) the results obtained.'" *Garcia v. Teitler*, No. 04 Civ. 832, 2004 WL 1636982, at *7 (E.D.N.Y. July 22, 2004) (quoting *Casper v. Lew Lieberbaum & Co., Inc.*, 182 F. Supp. 2d 342, 346 (S.D.N.Y. 2002)), *aff'd*, 443 F.3d 202 (2d Cir. 2006). "In calculating a reasonable attorney's fee in an action in diversity, courts may also apply the 'lodestar' method in addition to considering the *Garcia* factors." *D'Jamoos v. Griffith*, No. 00 Civ. 1361 (ILG), 2008 WL 2620120, at *4 (E.D.N.Y. Feb. 29, 2008) (citing, *inter alia*, *Sequa Corp. v. GBJ Corp.*, 156 F.3d at 148-49, and *Mar Oil, S.A. v. Morrissey*, 982 F.2d 830, 841 (2d Cir. 1993)); *see also Casper*, 182 F. Supp. 2d at 347 (conducting the *quantum meruit* exercise and stating, "[c]onsistent with *Sequa Corp.*, Chan has framed her request for fees using the lodestar approach."). This method, which results in the determination of "the presumptively reasonable fee,"[2] is "comprised of a reasonable hourly rate multiplied by a reasonable number of expended hours." *Finkel v. Omega Commc'n Servs., Inc.*, No. 06 Civ. 3597, 2008 WL 552852, at *6 (E.D.N.Y. Jan. 23, 2008).

In calculating the reasonable hourly rate, the Second Circuit has recently instructed

> the district court, in exercising its considerable discretion, to bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (referring to the factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). The factors that should be considered by the Court include "the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the

---

[2] The term "lodestar" has now been abandoned by the Second Circuit in favor of the "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008).

litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation." *Arbor Hill*, 522 F.3d at 184.

In addition, the determination of the reasonable value of the services at issue is a matter within the sound discretion of the trial court. *See Sequa Corp.*, 156 F.3d at 149. At bottom, the amount should be "fair" in the equitable sense; the Second Circuit has instructed that

> [a] charging lien, although originating at common law, is equitable in nature, and the overriding criterion for determining the amount of a charging lien is that it be "fair[.]"

*Sutton v. N.Y. City Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006) (internal citations omitted).

After careful review of the record and the billing invoices submitted for *in camera* review, the Court finds that Wagner Davis is entitled to a charging lien for the reasonable value of the services it has rendered on plaintiffs' behalf between December 20, 2006 and January 16, 2009 that remain unpaid by plaintiffs. Specifically, this includes payment for the firm's services as reflected in the billing invoices dated March 20, 2008 (for that portion of which remains unpaid), May 16, 2008, June 17, 2008, July 3, 2008, August 21, 2008, September 22, 2008, October 30, 2008, November 10, 2008, December 4, 2008, and January 20, 2009, subject to a 10% deduction in total hours expended by each attorney and a reduction in the hourly rate for each attorney, as discussed below.

a. Hours Expended

First, the Court notes that the lien should be fixed to account for services rendered beginning at the time of the action's commencement and not at the time that the firm was retained. The terms of Section 475 explicitly state that an attorney has a lien against his client's cause of action upon commencement of the action. *See* N.Y. Judiciary Law § 745. Here, the action was commenced on December 20, 2006. Indeed, Wagner Davis does not argue that it is entitled to a charging lien for any hours worked prior to that date. The submitted invoices account for unpaid charges beginning on February 7, 2008, which are included on the invoice dated March 20, 2008.

The hours actually expended and the rates actually charged are, of course, not dispositive of the amount at which the charging lien should be fixed. With respect to hours, "[i]f a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours." *Spalluto v. Trump Int'l Hotel & Tower*, No. 04 Civ. 7497 (RJS) (HBP), 2008 WL 4525372, at *6 (S.D.N.Y. Oct. 2, 2008) (quoting *Santa Fe Natural Tobacco Co. v. Spitzer*, Nos. 00 Civ. 7274 (LAP), 00 Civ. 7750 (LAP), 2002 WL 498631 at *3 (S.D.N.Y. Mar. 29, 2002)); *see also Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) ("If the court determines that certain claimed hours are excessive, redundant, or otherwise unnecessary, the court should exclude those hours in its calculation[.]") (internal quotation marks and citation omitted). In this respect, plaintiffs argue that certain of the charges were excessive or unnecessary.

7

As an initial matter, plaintiff argues that the bills fail to provide a break-down of time spent on each item and were "sent oftentimes more than three months apart." (Letter in Opposition by Geraldine Melnick dated February 2, 2009, at 1.) After careful *in camera* review of the invoices at issue, the Court finds such invoices describe the work performed on plaintiffs' behalf in sufficient detail. *See, e.g.*, *Spalluto*, 2008 WL 4525372, at *7 ("The invoices set forth the date on which services were performed, the hours spent, and the nature of the work performed for each attorney and the one paralegal. Such a submission meets the evidentiary threshold for the recovery of attorney's fees."); *Boster v. Braccia*, 06 Civ. 4756 (JG) (RER), 2007 WL 4287704 at *2 (E.D.N.Y. Dec. 4, 2007) (invoices supported award of attorney's fees because they were "sufficiently detailed"); *Gen. Motors Corp. v. Villa Marin Chevrolet, Inc.*, 240 F. Supp. 2d 182, 188 (E.D.N.Y. 2002) ("Upon reviewing the billing records submitted by counsel, the court finds that they are adequately detailed to permit the court to make determinations about the nature of the work performed, and whether the time spent was unnecessary, redundant or excessive."). However, the Court further notes that, with respect to a break-down of time spent on each item, there was repeated use of block-billing such that the reasonableness of each entry could not be as easily determined. Thus, the Court, in its discretion, has determined that a 10% reduction to billed hours is appropriate in this case. *See, e.g., Miroglio S.P.A. v. Conway Stores, Inc.*, — F. Supp. 2d — , No. 05 Civ. 121 (BSJ) (GWG), 2009 WL 1490546, at *5 (S.D.N.Y. June 22, 2009) ("Because the time records here contain some vague entries and block entries that prevent the Court from determining whether the time expended was reasonable . . . the Court will deduct a reasonable percentage of the number of hours claimed – in this case 15% . . . . The Court has used a percentage reduction on the low end of the scale because the overall number of hours sought are reasonable to begin with.") (internal citation and quotation marks omitted); *Spalluto*, 2008 WL 4525372, at *9 (applying 15% reduction for substantial use of block-billing and vague time entries); *Molefi v. Oppenheimer Trust*, No. 03 Civ. 5631 (FB) (VVP), 2007 WL 538547, at *7-8 (E.D.N.Y. Feb. 15, 2007) (applying 15% reduction for, *inter alia*, a "substantial amount" of block-billing); *Klimbach v. Spherion Corp.*, 467 F. Supp. 2d 323, 332 (W.D.N.Y. 2006) (reducing 10% of hours billed because of vagueness and block-billing); *Aiello v. Town of Brookhaven*, 94 Civ. 2622 (FB) (WDW), 2005 WL 1397202 at *3 (E.D.N.Y. June 13, 2005) (applying 10% reduction to billed hours because of attorneys' "substantial" use of block-billing); *Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*, 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003) (applying 15% reduction for block-billing and excessive time entries).

Plaintiff Melnick also argues that she specifically told the firm not to work on the foreclosure of the Delray Beach, Florida property and should therefore not be charged for any work in connection thereto. As the firm points out in response, however, a review of the invoices does not reflect any charges on work done with respect to that property's foreclosure and/or appearing in that foreclosure action; rather, they reflect a handful of phone calls made to counsel for the lender in the foreclosure action, and Wagner Davis has provided sufficient explanations as to why such monitoring was necessary in order to effectively proceed with this case.

Plaintiffs also question the amount of time spent by the firm on a deposition outline in preparation of the deposition of defendant. (*See* Letter in Opposition by Geraldine

Melnick, dated February 2, 2009, at 2.) The Court does not view such time as unreasonable in light of the task and the purported condition of the discovery materials provided by defendant to the firm and, in light of the 10% reduction in total hours that the Court has already determined, the Court finds no further reduction in hours expended is necessary, particularly because the hours billed with respect to the preparation for the deposition were block-billed with many other services.

As for the rest of plaintiffs' objections, including a claim that the firm double-billed on occasion for relaying voicemails or discussing a conference, Wagner Davis concedes that it should not bill plaintiffs twice for the same conference or work but argues that it never attempted to do so; again, the firm has provided sufficient explanations for the various charges that the Court finds persuasive. Similarly, the Court finds plaintiffs' other objections, including the claim that the firm has billed inappropriately for conversations with secretaries, for a motion for sanctions that was denied by the Court, and for counsel's checking the docket sheet in this case, to be without merit.

The Court does, however, find it necessary to subtract those hours that the firm spent on its motion to withdraw and on this pending motion. Such activities were not in furtherance of obtaining a favorable judgment on behalf of plaintiffs in this case and are thus not properly the subject of the charging lien. *See, e.g.*, *Cutner & Assocs., P.C. v. Kanbar*, No. 97 Civ. 1902 (SAS), 1998 WL 104612, at *3 (S.D.N.Y. Feb. 4, 1998) ("I do not believe that Kanbar should be required to pay for time that Cutner spent in making the motion to withdraw as counsel."); *Cass & Sons, Inc. v. Stag's Fuel Oil Co., Inc.*, 148 Misc. 2d 640, 643 (N.Y. Sup. Ct. 1990) ("I find and decide that the two motions to withdraw were not made for the benefit of the clients and accordingly, no fee should be allowed for the same. These applications were made for the benefit of the attorneys, so that they would be relieved of their responsibility to remain in the action as well as to have their fees fixed and have judgment entered thereon."); *Trendi Sportswear, Inc. v. Air France*, 146 Misc. 2d 111, 113 (N.Y. Civ. Ct. 1989) ("A statutory attorney's lien is a lien only for the value of services rendered and disbursements incurred in the particular action which produced the recovery sought to be charged. In order to be the subject of a lien, the services of the attorney must have aided in bringing about the judgment or award against which the lien is asserted. In the instant case, the services performed by the outgoing attorney to sever the attorney-client relationship with plaintiff and to fix the attorney's lien are not part of any effort or service which will aid in bringing about a judgment or an award in favor of plaintiff in the litigation which the lien is sought to be charged.") (internal citation omitted). The Court will therefore not count those hours billed after December 10, 2008, when the attorney-client relationship was put on notice of termination and the firm stopped working on plaintiffs' behalf with respect to this case.

Plaintiffs' basic contention seems to be that the maximum amount that the firm is entitled to should be $20,000, but plaintiffs do not explain how they came up with such a figure and merely assert in conclusory fashion that it is reasonable. In light of the Court's familiarity with this three-year long litigation and the nature and quality of the work undertaken by Wagner Davis on behalf of plaintiffs, it determines that a charging lien should be fixed to account for 90% of the hours billed to plaintiffs for work done prior to December 10, 2008, as that number of hours

billed is reasonable in the Court's view. *See Skylon Corp. v. Greenberg*, 164 F.3d 619, 619 (2d Cir. 1998) (affirming district court's determination of the amount of the charging lien and stating, "[t]he district court, which had observed Klepner & Cayea's work first-hand throughout the litigation, found that (1) this had been 'a difficult case' as compared to the general run of litigation, (2) Klepner & Cayea's time spent was reasonable, (3) the nature, extent, and quality of its work was reasonable, and (4) it had obtained 'high-quality results.'"); *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) ("[i]n calculating the number of reasonable hours, the court looks to its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.") (internal quotation marks and citation omitted). As one court has explained:

> We judge the reasonableness of an attorney's investment of time by what he or she was required to do in order to represent his client in a professional manner. That is determined, in general terms, by looking to what actions the attorney in question reasonably chose to undertake and the amount of time that should have been required to perform them.

*Gumowitz on Behalf of West Seventy-Ninth Street Assocs. v. Resolution Trust Corp.*, No. 90 Civ. 8083 (DAB), 1995 WL 375882, at *2 (S.D.N.Y. June 23, 1995). The Court here has determined that the firm's time was reasonable in light of the actions that were required in order to represent plaintiffs in a professional manner, and thus only a 10% reduction in total hours is appropriate because of the repeated use of block-billing. Thus, although the Court does, in its discretion, use a percentage deduction "'as a practical means of trimming fat from a fee application,'" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983)), its determination is that such a deduction should be relatively small in light of the record.

Accordingly, the Court has totaled the hours worked by each attorney of record, as reflected by the unpaid invoices, to be discounted by 10% and then multiplied by an appropriate hourly rate for each attorney, as further determined below.

### b. Hourly Rate

Again, in determining the reasonable amount of the lien, the district court may calculate a "presumptively reasonable" figure based upon the number of hours reasonably expended by counsel on the litigation multiplied by a reasonable hourly rate. *See Cruz v. Local Union No. 3 of the Int'l Bd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994). The reasonable hourly rate should take into account all of the case-specific variables and, as the Second Circuit has made clear, the Court may consider the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974),[3] in making this determination.

---

[3] The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitation imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience,

10

Ultimately, the hourly rate "boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Simmons v. N.Y. City Transit Auth.*, — F.3d — , No. 08 Civ. 4079, 2009 WL 2357703, at *3 (2d Cir. Aug. 3, 2009) (quoting *Arbor Hill*, 493 F.3d at 112, 118).

Also, according to the "forum rule," courts "should generally use 'the hourly rates employed in the district in which the reviewing court sits' in calculating the presumptively reasonable fee." *Arbor Hill*, 493 F.3d at 119; *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115-16 (2d Cir. 1997) ("The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation,'" and the "prevailing community" for these purposes is "'the district in which the court sits.'") (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) and *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)). "The Court is also free to rely on its own familiarity with prevailing rates in the District." *Spalluto*, 2008 WL 4525372, at *12. A presumption in favor of applying the forum rule exists, and Wagner Davis, although it is a firm based in Manhattan, has not overcome this presumption by arguing that higher out-of-district rates must apply or setting forth evidence to "persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons*, 2009 WL 2357703, at *4.

Because the firm has not provided any evidence of the prevailing market rates in this District, the Court has researched the prevailing market rates in the Eastern District of New York for lawyers in comparable cases involving real property disputes. *See Moreno v. Empire City Subway Co.*, No. 05 Civ. 7768 (LMM) (HBP), 2008 WL 793605, at *7 (S.D.N.Y. Mar. 26, 2008) (finding that, where the fee applicant "has submitted no evidence of the prevailing market rate for attorneys of like skill litigating cases similar to plaintiff's, *i.e.* negligence and personal injury cases . . . it is within [the court's] discretion to determine the reasonable hourly rate at which plaintiffs counsel should be compensated based on [the court's] familiarity with plaintiff's case and the prevailing rates in the Southern District."); *see also Alexander v. Amchem Products, Inc.*, No. 07 Civ. 6441 (RJS), 2008 WL 1700157, at *7 (S.D.N.Y. Apr. 3, 2008) ("Other than Counsel's conclusory assertion that a $600 rate is 'reasonable,' he has failed to submit any case authority or other evidence in support of the reasonableness of the proffered rate. Thus, Counsel's submissions are of little help to the 'case-specific inquiry' that must be conducted by this Court regarding 'the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.'") (quoting *Farbotko v. Clinton County of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005) and citing *Moreno*, 2008 WL 793605, at *7). As a result of such research, the Court finds that the hourly rate proffered by Wagner Davis' attorneys – $300 or $325 per hour for the associate, and $400 per hour for the partners – is higher than the prevailing rate in this District given the particular circumstances of the representation in this case. A review of recent cases in this District indicates that the range of appropriate

---

reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." 488 F.2d at 717-19.

11

billing rates is $200 - $375 per hour for partners and $100 - $295 per hour for associates. *See, e.g., Kochisarli v. Tenoso*, No. 02 Civ. 4320 (DRH) (MLO), 2008 WL 1882662, at *7 (E.D.N.Y. Apr. 24, 2008) ("[F]or actions in this District involving mortgages and promissory notes attorneys' fees have been approved in the range of $150 to $175 (for senior associates) and $200 to $250 for partners."); *Gen. Motors Corp.*, 240 F. Supp. 2d at 188 (hourly rates in suit involving complex commercial, franchising, real estate and contracting issues found reasonable where partner's rate was $315 - $375, senior associate's rate was $225 to $295 per hour, and junior associate's rate was between $140 and $225 per hour); *cf. 235 E. 83 Realty, L.L.C. v. Fleming*, No. 80604/06, 2008 WL 595919, at *1 (N.Y. City Civ. Ct. Mar. 3, 2008) ("Respondents' attorney has been admitted to the bar for 14 years . . . . His primary area of practice is real estate and landlord-tenant litigation. As of February 2007, his hourly rate was $230.00 an hour. He then increased the hourly rate to $250.00 an hour, and in January 2008, he increased it again to $275 an hour. Considering respondents' attorney's experience and the customary rate for similar services in Manhattan, the court finds his hourly rates reasonable."). As a general matter, the hourly rates billed by Wagner Davis are higher than the prevailing market rates for attorneys in this District. *See, e.g., Moran v. Sasso*, No. 05 Civ. 4716 (DRH) (ETB), 2009 WL 1940785, at *4 (E.D.N.Y. July 2, 2009) ("In the Eastern District of New York, reasonable hourly rates have ranged from '$200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants.'") (quoting *Cho v. Koam Med. Serv. P.C.*, 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007)); *Duverger v. C&C Duplicators, Inc.*, No. 08 Civ. 0721 (DRH) (ARL), 2009 WL 1813229, at *2 (E.D.N.Y. June 25, 2009) ("Overall hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates and $70 to $80 for legal assistants.") (quoting *Cruz v. Henry Modell & Co.*, No. 05 Civ. 1450 (AKT), 2008 WL 905351, at *7 (E.D.N.Y. Mar. 31, 2008)); *Access 4 All, Inc. v. 135 West Sunrise Realty Corp.*, No. 06 Civ. 5487 (AKT), 2008 WL 4453221, at *6 (E.D.N.Y. Sept. 30, 2008) (same); *Cheesecake Factory Assets Co. LLC v. Philadelphia Cheese Steak Factory Inc.*, No. 05 Civ. 3243 (NGG) (RML), 2008 WL 2510601, at *5 (E.D.N.Y. June 20, 2008) ("recent case law in this circuit has not approved rates over $300 per hour for associates or $150 per hour for paralegals/clerks"); *Coated Fabrics Co. v. Mirle Corp.*, No. 06 Civ. 5415, 2008 WL 163598, at *7 (E.D.N.Y. Jan. 16, 2008) ("Hourly rates approved in recent Eastern District of New York cases have ranged from $200 to $375 for partners, $200 to $250 for senior associates and $100 to $150 for junior associates.") (collecting cases); *Alveranga v. Winstono*, No. 04 Civ. 4356 (ARR) (CLP), 2007 WL 595069, at *6-7 (E.D.N.Y. Feb. 22, 2007) ("The Court also agrees with defendants that Ms. Schiff's requested fee rate of $450.00 per hour is higher than the average rate found to be reasonable for a case of this type and a practitioner of her experience in the Eastern District of New York . . . . Instead, the Court, based on its extensive experience with fee applications, finds that $450.00 per hour is more consistent with the rate being paid to senior attorneys in larger firms for work performed in connection with more complex litigation.") (internal citations omitted); *S.E.C. v. Goren*, 272 F. Supp. 2d 202, 207 (E.D.N.Y. 2003) ("[C]ourts in this district employed, and the Second Circuit upheld, rates of $200 per

hour for partners, $135 per hour for associates and $50 per hour for paralegals. These rates were recently confirmed by Judge Nicholas Garaufis, who has recently held that 'the prevalent rate in this district is in the range of $200 and $250 for partners and between $100 to $200 for junior and senior associates.'") (quoting *Rotella v. Bd. of Educ.*, No. 01 Civ. 0434 (NGG), 2002 WL 59106, *2 (E.D.N.Y. Jan. 17, 2002)) (additional citations omitted).

Accordingly, the Court, in the exercise of its discretion, determines that the following rates are appropriate and reasonable in this case: $250 per hour for the work of associate Mikelle V. Komor, who performed the bulk of the work on this case, and $350 per hour for the work of partners Steven R. Wagner and Bonnie R. Berkow. Based on the evidence gathered regarding the prevailing market rates and due to the nature of the claims at issue and after consideration of all the case-specific factors, the Court finds that rates any higher than these are not warranted and any rates lower than these would not adequately compensate Wagner Davis for their services, in light of all of the factors. Again, the prevailing hourly rate in this district for senior associates is generally $200 to $250, *Cho*, 524 F. Supp. 2d at 207, and the firm has submitted no evidence to justify any departure from these market rates. Moreover, in terms of other *Johnson* factors, the Court has considered them in its discretion and concludes that the above-referenced hourly rates, which are consistent with those prevailing generally in this District, are appropriate in this case. Accordingly, even though the firm seeks to bill Ms. Komor at a rate of $300 for services rendered before May 1, 2008 and $325 for services rendered thereafter,[4] as well as $400 per hour for the services of Mr. Wagner and Ms. Berkow, the Court, while taking these billing rates into consideration, has nonetheless deemed it appropriate to adjust them downward to $250 per hour and $350 per hour, respectively.

As for the expenses billed to plaintiffs for copies of documents, mailings, investigative and legal research fees, and other expenses, plaintiffs do not dispute the fees charged on the invoices, and so those fees will also attach to the charging lien, to the extent that they are thus far unpaid and were incurred between the commencement of the litigation and prior to December 10, 2008. *See, e.g., Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 149-50 (2d Cir. 1998) (affirming judgment including disbursements); *Hedman, Gibson & Costigan, P.C. v. Tri-Tech Systems Intern., Inc.*, No. 92 Civ. 2757 (JFK), 1995 WL 555702, at *4 (S.D.N.Y. Sept. 18, 1995) (fixing the value of legal services and disbursements secured by a charging lien). However, those expenses that are on the January 20, 2009 invoice will not be included, since they are not itemized by date, and the attorney-client relationship was terminated on December 10, 2008.

In sum, the amount of the charging lien against plaintiffs' cause of action in this case will be fixed in the total amount of $26,844.91, representing as follows: (1) 102.87 hours, or

---

[4] The Court further notes that, although Wagner Davis charged $325 per hour for the work performed by Mikelle V. Komor beginning with the invoice dated June 17, 2008, the retainer agreement provided that the rate for associates would be no more than $300 per hour, unless it was agreed by the parties that such a rate would be adjusted in a supplemental retainer letter. No supplemental retainer letter has been provided to the Court.

13

90% of 114.3 hours, billed at the rate of $250 per hour for the services of associate Mikelle V. Komor; (2) 8.55 hours, or 90% of 9.5 hours, billed at the rate of $350 per hour for the work of partner Steven K. Wagner; (3) .36 hour, or 90% of .4 hour, billed at the rate of $350 per hour for the work of partner Bonnie R. Berkow; (4) a deduction of work billed in connection with the motion to withdraw as counsel and to fix a charging lien, determined to be 16.8 hours billed by Mikelle V. Komor and .8 hours billed by Steven K. Wagner, for a total reduction of $4,480.00; (5) a deduction for a payment previously made by plaintiffs, as reflected on the March 20, 2008 invoice, of $2,220.00; and (6) an addition of the fees, undisputed by plaintiffs, expended prior to December 10, 2008 that remained unpaid, in the amount of $4,708.91.

### B. Plaintiffs' Motion to Compel Compliance with Court Order

Plaintiffs seek the turnover of all the files in this case that are currently in the possession of Wagner Davis, including materials received from plaintiffs and a copy of the deposition transcript of defendant Press. Plaintiffs claim that, pursuant to the Court's Order of January 16, 2009, the firm was compelled to turn over all such files to plaintiffs' new counsel. For the reasons set forth below, the Court denies plaintiffs' motion to compel enforcement of the Court's Order as moot, because plaintiffs do not dispute that Wagner Davis has already provided plaintiffs' new counsel with discovery materials received from defendant. All other materials, including those documents provided to Wagner Davis by plaintiffs, are subject to a retaining lien that Wagner Davis is entitled to under the common law and need not be turned over.

Under common law, an attorney who has been discharged by a client without cause may invoke a retaining lien on the client's papers and files in his possession. *See, e.g., Ross v. Mitsui Fudosan, Inc.*, No. 97 Civ. 0975 (PKL), 1998 WL 556171, at *3 (S.D.N.Y Sept. 1, 1998). "Generally, the Court should determine the amount of the retaining lien and the client should remit this amount before the attorney is required to provide the file to the client." *Id.* Moreover, "[a] retaining lien remains in force until the client's account is paid in full." *Theroux v. Theroux*, 145 A.D.2d 625, 626 (N.Y. App. Div. 1998). Importantly, "[t]he three remedies of an attorney discharged without cause – the retaining lien, the charging lien, and the plenary action in *quantum meruit* – are not exclusive but cumulative." *Levy v. Laing*, 43 A.D.3d 713, 715 (N.Y. App. Div. 2007).

Although an exception to a retaining lien does apply where extreme hardship is shown, no such extraordinary circumstances are present here. *See, e.g., Pomerantz v. Schandler,* 704 F.2d 681, 683 (2d Cir. 1983) (files surrendered if criminal defendant makes a "clear showing of the need for the papers, the prejudice that would result from denying him access to them, and his inability to pay the legal fees or post a reasonable bond."). The Court's prior ruling indicated that all discovery materials be provided to new counsel; however, the remaining file may be subject to Wagner Davis' retaining lien, absent a showing that such a result would be inequitable and lead to new counsel's inability to adequately prepare plaintiffs' case. Currently, the firm has not requested that the firm fix the amount of the retaining lien. Thus, if plaintiffs seek turnover of these other materials, they must either pay Wagner Davis or post security pending determination of the amount of the retaining lien. *See Rivkin v. A.J. Hollander & Co., Inc.*, No. 95 Civ. 9314 (DAB) (AJP), 1996

WL 633217, at *1 (S.D.N.Y. Nov. 1, 1996); *see also Matter of Science Dev. Corp.*, 159 A.D.2d 343, 344 (N.Y. App. Div. 1990) (files released upon client posting bond for the fees).

The Court recognizes that there is some authority suggesting that a court may "substitut[e] the statutory charging lien for the retaining lien with respect to the amount of that fee." *See Security Credit Sys., Inc. v. Perfetto*, 242 A.D.2d 871, 871-72 (N.Y. App. Div. 1997); *Braider v. 194 Riverside Owners Corp.*, 237 A.D.2d 147, 147 (N.Y. App. Div. 1997)*; Moore v. Ackerman*, 876 N.Y.S.2d 831, 834 (N.Y. Sup. Ct. Mar. 11, 2009). This, however, only makes sense if the charging lien adequately protects Wagner Davis' interest in payment, which in the Court's view, it does not. Indeed, a charging lien does not "constitute[] security for the relinquishment of a retaining lien[.]" *Steves v. Serlin*, 125 A.D.2d 780, 782 (N.Y. App. Div. 1986) (citations omitted); *see also Singer v. Four Corner Serv. Station*, 105 N.Y.S.2d 77, 79 (N.Y. Sup. Ct. 1951) ("It has been argued that the fixation of the amount of the attorney's retaining and charging lien upon the cause of action and proceeds therefrom represents security for the payment of the retiring attorney's fee and that once such security is established payment is not necessary to require the attorney to turn over his papers. Such an argument can have no foundation because it would obviously destroy the meaning and value of the attorney's retaining lien."). In this respect, the retaining lien is "valuable only because of the 'inconvenience' caused to the client from denial of access to papers involved in the lawsuit." *Rivkin*, 1996 WL 633127, at *4. Thus, the Court declines to effectively nullify Wagner Davis' retaining lien by ordering the turnover of all of the documents in its possession related to this case, given that plaintiffs have not demonstrated extreme hardship or posted security for such a lien. Therefore, any motion for the additional documents is denied.

### III. CONCLUSION

For the foregoing reasons, Wagner Davis P.C.'s motion to fix the amount of an attorneys' charging lien, pursuant to New York Judiciary Law § 745, is granted. The amount of the charging lien is $26,844.91.

It is further ordered that plaintiffs' motion to compel compliance with this Court's Order dated January 16, 2009 (directing that Wagner Davis provide plaintiffs' new counsel with discovery material received from defendant) is denied as moot. To the extent plaintiffs seek to compel the production of any other documents in the possession of Wagner Davis, that motion is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: August 28, 2009
      Central Islip, New York